United States District Court
District of Massachusetts

John Conteh,
    Petitioner,

v.

Joseph M. McDonough, Sherriff,
    Respondent.

Civil Action No.
04-CV-11685-RWZ

Reply to Respondents Motion to Dismiss a Petition for a Writ of Habeas Corpus.

I

This Court has Jurisdiction over the Petitioner, and venue is proper in this Court.

The Court has authority under 28 U.S.C § 2241 to grant a writ of Habeas Corpus within its jurisdiction. This Court has jurisdiction over the petitioners claim

Because petitioner is being detained in Plymouth County and is thus subject to this Court's personal jurisdiction.

A writ of habeas corpus may be issued by a District Court if it has personal jurisdiction over the petitioner or his custodian. See, e.g., <u>Braden v. 30th Judicial Circuit Court of Kentucky</u>, 410 U.S. 484, 495 (1973).

The Court has jurisdiction because of respondents action contrary to the Administrative Procedure Act ("APA").

Under the APA, "a person suffering a legal wrong ... or adversely affected or aggrieved by an agency action ... is entitled to judicial review thereof." 5 U.S.C. § 702.

The reviewing court is thus permitted to "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law". Id. § 706(2)(A).

The reviewing court "shall ... compel agency action **unlawfully** withheld or unreasonably delayed." Id. § 706(1).

This Court has jurisdiction because the United States is still a signatory to the

INTERNATIONAL COVENANT ON CIVIL AND POLITICAL RIGHTS ADAPTED AND OPENED FOR SIGNATURE, RATIFICATION AND ACCESSION BY GENERAL ASSEMBLY RESOLUTION 2200A (XXI) OF 16 DECEMBER 1966, ENTRY INTO FORCE 23 MARCH 1976, IN ACCORDANCE WITH ARTICLE 49 OF THE UNITED NATIONS CHARTER, AND RESPONDENT IS AN AGENCY OF THE UNITED STATES.

Preamble TO THE COVENANT. STATES THAT:-

THE PARTIES TO THE PRESENT COVENANT, CONSIDERING THAT, IN ACCORDANCE WITH THE PRINCIPLES PROCLAIMED IN THE CHARTER OF THE UNITED NATIONS, RECOGNITION OF THE INHERENT DIGNITY AND OF THE EQUAL AND INALIENABLE RIGHTS OF ALL MEMBERS OF THE HUMAN FAMILY IS THE FOUNDATION OF FREEDOM, JUSTICE AND PEACE IN THE WORLD, . . . . . . . CONSIDERING THE OBLIGATION OF STATES UNDER THE CHARTER OF THE UNITED NATIONS TO PROMOTE UNIVERSAL RESPECT FOR, AND OBSERVANCE OF, HUMAN RIGHTS AND FREEDOMS, REALIZING THAT THE INDIVIDUAL, HAVING DUTIES TO OTHER INDIVIDUALS AND TO THE COMMUNITY TO WHICH HE BELONGS, IS UNDER A RESPONSIBILITY TO STRIVE FOR THE PROMOTION AND OBSERVANCE OF THE RIGHTS RECOGNIZE IN THE PRESENT COVENANT, AGREE UPON THE FOLLOWING ARTICLES:

Article 2, Section 3(a):-
EACH STATE TO ~~THE PARTY~~ THE PRESENT

COVENANT UNDERTAKES:

(a) TO ENSURE THAT ANY PERSON WHOSE RIGHTS OR FREEDOMS AS HEREIN RECOGNIZED ARE VIOLATED SHALL HAVE AN EFFECTIVE REMEDY, NOTWITHSTANDING THAT THE VIOLATION HAS BEEN COMMITTED BY PERSONS ACTING IN AN OFFICIAL CAPACITY.

ARTICLE 6, § 1.

EVERY HUMAN BEING HAS THE INHERENT RIGHT TO LIFE. THIS RIGHT SHALL BE PROTECTED BY LAW. NO ONE SHALL BE ARBITRARILY DEPRIVED OF HIS LIFE.

ARTICLE 7.

NO ONE SHALL BE SUBJECTED TO TORTURE OR TO CRUEL, INHUMANE OR DEGRADING TREATMENT OR PUNISHMENT......,

ARTICLE 9 § 1.

EVERYONE HAS THE RIGHT TO LIBERTY AND SECURITY OF PERSON. NO ONE SHALL BE SUBJECTED TO ARBITRARY ARREST OR DETENTION. NO ONE SHALL BE DEPRIVED OF HIS LIBERTY EXCEPT ON SUCH GROUNDS AND IN ACCORDANCE WITH SUCH PROCEDURE AS ARE ESTABLISHED BY LAW.

ARTICLE 9 § 2.

ANYONE WHO IS ARRESTED SHALL BE INFORMED, AT THE TIME OF ARREST, OF THE REASONS FOR HIS ARREST AND SHALL BE PROMPTLY INFORMED OF ANY CHARGES AGAINST HIM.

ARTICLE 9 §4. Anyone who is deprived of his liberty by arrest or detention shall be entitled to take proceedings before a court, in order that court may decide without delay on the lawfulness of his detention and order his release if the detention is not lawful.

ARTICLE 14 § 7.

No one shall be liable to be tried or punished again for an offence for which he has already been finally acquitted in accordance with the law and penal procedure of each country.

**VENUE** in the district of Massachusetts is also proper because petitioner is in the custody of respondent, which encompasses Plymouth. 28 USC § 1391.

## STANDARD OF DECISION

Summary judgement is proper if, drawing all resonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and **the moving party is entitled to judgment as a matter of law.** Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505 91 L.ed.2d 202 (1986).

The moving party bears the burden of showing that the material facts in the case are undisputed. See Celotex, 477 U.S. at 322, 106 S.Ct. 2548; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000).

The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. See Graves v. Arkansas Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997).

The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exists creating a genuine issue for trial. See Anderson, 477 U.S. at 256, 106 S.Ct. 2505; Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

The Respondents reliance on Congressional intent to engage in actions ~~contrary to~~ contrary to agency's regulation and statutary ~~language of the law~~ interpretation must be rejected by this court, as Respondents actions qualifies as neither a regulation itself nor an interpretation of an ambiguous regulation or statute, rather, it is the sort of interpretation "I will do it because I can" that is beyond the Chevron

PALE.

Respondents action does what neither this court nor the agency is permitted to do: "Add additional requirements not contemplated by Congress." Beltran v. United States Immigration and Naturalization Service, 332 F.3d 407, 412 (6th Cir. 2003).

Respondent's practice of charging petition with a crime which a jury has acquitted him for and detaining petitioner on that "is not a mere interpretation of the statute, but an addendum," and defendant have "no power to either ignore clear congressional intent or amend the legislation," Hernandez v. Reno, 91 F.3d 776, 780 (5th Cir. 1996) by adding extra meaning to a statute that is plainly not so.

Just as "Courts are obligated to refrain from embellishing statutes by inserting language that Congress has opted to omit," Root v. New Liberty Hospital Dist., 209 F.3d 1068, 1070 (8th Cir. 2000), so too must Respondent avoid taking away with their practices what Congress has granted by statute by violating the language of the statute. Respondent have no more power to charge me with an offense for bank fraud which a jury has acquitted be petitioner of committing and keep him in jail for 4 years now going while he remains an asylee.

## STATUTORY AND REGULATORY BACKGROUND

### I

Prior to 1980, the United States had no uniform system for admitting and resettling refugees and asylees. See generally Steel of Immigration Law, 2d § 8:1 (2003). While Congress had enacted legislation with respect to various classes of refugees, federal refugee policy consisted largely of ad hoc programs developed in response to separate mass-refugee crisis. Id. Refugees and asylees who did not fall into any of these categories were dependent upon the Attorney General's discretionary power to "parole" aliens into the United States. Id.

Thus, pre-1980 refugee and asylee law was a patchwork of ad hoc legislation and executive grace.

Through the Refugee Act of 1980, Congress replaced this chaotic arbitrary system with one designed to provide a permanent and systematic procedure for the admission to this country of refugees of special humanitarian concern to the United States, and to provide comprehensive and uniform provisions for the effective resettlement and absorption of those refugees who are admitted.

Refugee Act of 1980, § 101(b), Pub.L. 96-212,

Accord Aliens and Nationality, Refugee and Asylum Procedures, 46 F.R. 45116 (September 10, 1981) (INS application of this stated purpose to the asylee adjustment provisions of the statute).

Through the Refugee Act, Congress codified the United Nations' definition of "refugee", 8 USC § 1101(a)(42), curtailed the Attorney General's parole power. Id. § 1182(d)(5), and standardized the admissions process for refugees and asylees, Id. §§ 1157-59.

## II
## Asylees

Under the Refugee Act, "any alien who is physically present in the United States ..... may apply for asylum". Id. § 1158. If the applicant can established that he or she is a "refugee", within the meaning of 8 USC § 1101(a)(42)(A), and meets other criteria, such as well-founded fear of persecution, See 8 C.F.R. § 208.13(b), the applicant may be granted asylum in the United States.

Asylee status is indefinite; it does not automatically expire. 8 C.F.R. § 208.14(d). An asylee's status can change, however, if the government adjusts the asylee's status to that of permanent

Resident see 8 USC § 1159(b).

Aliens may be granted asylum by either the executive branch or the judiciary.

## ARGUMENT -I-

The Court should reject the Respondents argument that "Petitioner should exhaust all administrative remedies" before this Honourable Court will assume jurisdiction and grant Petitioner a bond pending the outcome of these proceedings.

Even where statutes impose an exhaustion requirement, the Supreme Court has, despite the rhetoric of jurisdictional carved out exceptions.

The best founded is one suggested by the Supreme Court, and explicitly recognized in this Court and other Circuits, where a resort to the agency would be futile because the challenge is one that the agency has no power to resolve in the applicants favor. Barnal-Vallejo. v. INS, 195 F.3d 56, 64 (1st Cir. 1999); Rivindran, 976 F.2d at 762. See generally, Matthews v. Eldridge, 424 U.S. 319, 329-30 & n.10, 96 S.Ct 893, 47 L.ed. 2d 18 (1976).

It has been settled for over a century that all aliens within our territory are "person" entitled to the

protection of the Due Process Clause.

Aliens residing in the United States for a shorter or longer time, are entitled, so long as they are permitted by the government of the United States to remain in the country, to the safeguards of the Constitution, and to the protection of the laws, in regard to their rights of person and of property, and to their civil and criminal responsibility." Fong Yue Ting v. United States, 149 U.S. 698, 724, 13 S.Ct. 1016, 37 L.ed. 905 (1893).

The Japanese Immigrant Case, 189 U.S. 86, 100-101, 23 S.Ct. 611, 47 L.ed. 721 (1903), settled any lingering doubt that the Fifth Amendment's Due Process Clause gives aliens a right to challenge mistreatment of their persons or property.

Petitioner's claim is a limited one; not that the government may not detain aliens to ensure their appearances at removal hearings, but that, the due process under the Fifth Amendment conditions a potentially lengthy detention on a hearing and an impartial decision maker's findings that detention is necessary to a governmental purpose.

The claim to liberty protected by the Fifth Amendment is at its strongest when the government seeks to detain petitioner for over three years now.

The institutionalization of an adult by the government triggers heightened, substantive due process scrutiny";

Foucha v. Louisiana, 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.ed.2d 437 (1992) "Freedom from bodily restraint has always been at the core of the liberty protected by the due process clause from arbitrary governmental action".

Accordingly, the Fifth Amendment permits detention only where heightened, substantive due process scrutiny "finds a" sufficiently compelling governmental need. Flores, supra, at 316, 113 S.Ct 1439.

The Zadvydas opinion opened by noting the clear applicability of general due process standards: physical detention requires bot a "special justification" that outweighs the individuals constitutionally protected interest in avoiding physical restraint" and "adequate procedural protections. Zadvydas, 533 U.S. at 690, 121 S.Ct 2491.

There must be a sufficiently compelling governmental interest to justify such an action, which in this case is missing.

The class of persons subject to confinement must be commsurately narrow and the duration of confinement limited accordingly. Zadvydas supra, at 691, 121 S.Ct. 2491; Hendricks, 151 U.S., at 368, 117 S.Ct. 2072;

This case is also not about the governments undisputed power to detain aliens in order to avoid flights or prevent danger to the community.

The issue is whether that power may be exercised by detaining a still lawful asylee when there is

no reason for it and no way to challenge it.

Under the Administrative Procedure Act ("APA") a person suffering a legal wrong ... or adversely affected or aggrieved by an agency's action ... is entitled to judicial review thereof" 5 USC § 702.

The reviewing court is thus permitted to "hold unlawful and set aside agency's action, findings and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law". Id § 706(2)(A). The reviewing court shall compel agency action unlawfully withheld or unreasonably delayed." Id. § 706(1).

Though there is a strong presumption favoring exhaustion of administrative remedies, however, certain constitutional due process claims may not require exhaustion when there has been a showing that the BIA could not deal dispositively with the matter. U.S.C.A. Const. Amend. 5.; INA, § 242(d), as amend, 8 USCA §1252(d).

Alien's claim that his due process rights were violated when foot-dragging by INS prevented him from obtaining relief from deportation when he was eligible, was not one with which Board of Immigration Appeals (BIA) could deal dispositively and he thus was not required to exhaust administrative remedies before seeking review in Court of Appeals. U.S.C.A. Const. Amend. 5; INA § 242(d) as amended, 8 USCA §1252(d).

The Supreme Court has held that, to prevail in facial challenge to regulation which has not been applied, party challenging regulation must established that no set of circumstances exist under which regulation would be valid, such is true as to both constitutional and statutory challenges, in ~~Response~~ petitioners case, no such circumstances exist that the government will prevail based on this charged.

The government did not charge petitioner with 8 USC § 1226(c)(1)(B) as respondent claimed in his response to this court.

Specifically, the government charged petitioner under § 237(a)(2)(A)(iii), I&N Act [8 USC § 1227(a)(2)(A)(iii)] convicted of aggravated felony under sections 101(a)(43)(M), (U), I&N Act [8 USC § 1101(a)(43)(M); (U).

An aggravated felony is a term of art defined in various subsections of 8 USC § 1101(a)(43), subsection (U) ~~Section (U)~~ of ~~the~~ 8 USC § 1101(a)(43) is not self contained in itself, it depends on other convictions of subsections of 8 USC § 1101(a)(43), which petitioner was not convicted of committing; ~~the~~

Under 8 USC § 1227(a)(2)(A)(iii) "deportability is premised on the existence of a conviction", not on an inquiry into a particular defendants conducts, and this is exactly what the government has done in this case.

The Judge has openly declared in court that, he knows that I was not convicted of those offenses, but still

won't grant me a ~~release~~ and kept dragging the case for over one year, petitioner had no other option but to petition the federal court for bond.

Without bond from this court, the case will come back to the same court, and the whole loop will start again, no end to the administrative process, by deliberately punishishing petitioner for bank fraud that he was not convicted for.

## II

Petitioner is unlawfully detained by respondent and this honourable court should reject respondents argument that petitioner is lawfully detained.

The Fifth Amendment due process clause protects against federal government deprivation of life, liberty, or property without fair and adequate procedures see. Matthews v. Eldridge v. 424, U.S. 319 (1976).

The Supreme Court recently reaffirmed that the protections of the due process clause "applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary or permanent". Zadvydas v. Davis, 121 S.ct. 2491 (2001).

Thus, for example, procedural due process challenges may be made to mandatory detention statutes or practices.

It is a violation of procedural due process for

the government conclusively to presume unfitness for some benefit on the basis of some event or characteristics, without holding an individualized hearing on the issue of unfitness.

Thus, procedural due process challenges may be made to mandatory detention rules that do not permit individualized hearing on the issue of whether an individual is a threat to the community or a risk of flight. See. PATEL v. ZEMSKI, 2001 U.S. App. Lexis. 26907 (3d Cir. 2001).

8 USC § 1226(c) tells the Attorney General to "take into custody any alien who... is deportable." (emphasis added), not one who may, or may not, fall into that category.

§ 208.21(a) states that, "an alien who has been granted asylum may not be deported or removed unless his or her asylum status is terminated pursuant to § 208.23 of this part.

It is clear from the reading of this statute that, 8 USC § 1226(c) is inapplicable to petitioner, as the Respondent has not taken the statutorily mandated steps for petitioner to be detained.

Given the existence of this regulation (one which is mandated by statute), the Respondent is estopped from placing petitioner in detention.

Petitioner's offense occurred before petitioner was

GRANTED ASYLUM, PETITIONER HAS SINCE BEEN WORKING AND PAYING TAXES SINCE HE WAS GRANTED ASYLUM IN 1997.

AS THE SERVICE [UNDER THE NEW YORK JURISDICTION OVER MY ASYLUM CASE] HAS NOT TERMINATED MY ASYLUM STATUS, PETITIONER CONTINUES IN ASYLUM STATUS, AND MAY NOT BE DEPORTED TO HIS NATIVE COUNTRY IN VIOLATION OF THE ATTORNEY GENERALS OWN REGULATIONS AND THE GENEVA CONVENTION. IF HIS ASYLUM STATUS HAS TERMINATED, IT CAN ONLY BE THROUGH THE ACQUISITION OF U.S. NATIONALITY, IN WHICH CASE HE IS NOT ~~DEPORTABLE~~ AN ALIEN AND IS NOT DEPORTABLE.

ONE ADMITTED UNDER THE REFUGEE ACT AS AN ASYLEE CONTINUES UNDER THE PROTECTION OF THE U.S. LAWS ON REFUGEES, WHICH ITSELF IMPLEMENTS THE GENEVA CONVENTION RELATING TO THE STATUS OF REFUGEES ("CONVENTION"), TO WHICH THE U.S. BOUND BY ITS ACCESSION TO THE U.N. PROTOCOL RELATING TO THE STATUS; THE UNITED STATES THROUGH RESPONDENT IS BOUND BY ARTICLE 14 § 7 OF THE UNIVERSAL HUMAN RIGHTS CONVENTION WHICH STATES THAT:-

~~RESPONDENTS CLAIM THAT PETITIONER HAD A CUSTODY DETERMINATION SHOULD BE REJECTED~~

"NO ONE SHALL BE LIABLE TO BE TRIED OR PUNISH AGAIN FOR AN OFFENCE WHICH HE HAS ALREADY BEEN FINALLY ACQUITTED IN ACCORDANCE WITH THE LAW AND PENAL PROCEDURE OF EACH COUNTRY"

A JURY HAS FOUND PETITIONER NOT GUILTY OF COMMITTING THOSE OFFENCE THAT HE IS BEING DETAINED FOR BY RESPONDENT.

Clearly, even asylees are subject to sanctions for criminal conduct. But ~~respondent~~ petitioners criminal conduct occured be he was granted asylum in 1997, Petitioner has been a model resident in New York, working for hospitals, and various Fortune Five Hundred companies as a computer consultant.

The court should look with disfavor upon actions by a federal agency in violation of its own regulations.

The Supreme Court has stated that "where the rights of individuals are affected, it is incumbent upon the agencies to follow their own procedures" Morton v. Ruiz, 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.ed. 2d. 270 (1974).

There being no statutory or regulatory provisions for petitioners removal without termination of his status by law, the respondent cannot charge or demonstrate reasons for his detention and his expulsion. Petitioner is not charged with being a spy, anarchist, communist or terrorist, nor with committing genocide. He has not committed any drug trafficking offenses, nor any offense under §1101(a)(43).

The respondent cannot seriously contest that petitioner ~~he~~ represent a threat to public order by reason of having being convicted of a conspiracy which occured before petitioner was granted asylum in 1997, for which he was granted bond on personal recognizance, free throughout the proceeding, and personally

SELF SURRENDERED TO THE MARSHALS AS ORDERED.

— B —

**THE COURT SHOULD REJECT RESPONDENTS CLAIM THAT PETITIONER HAD A CUSTODY DETERMINATION, THAT ~~AND~~ PETITIONER FAILED TO APPEAL THIS DECISION**

THIS COURT SHOULD REJECT THIS ARGUMENT, TOGETHER WITH THE "ATTACHMENT A" THAT CAME WITH IT.

RESPONDENTS ARGUMENT ("Joseph's hearing") AND Exhibit-A IS AT BEST SELF SERVING AND AT WORST OUTRIGHT MISREPRESENTATION.

NO SUCH ORDER WAS EVER ISSUED UNDER THE SUN. INFACT, THE PAPER SPEAKS FOR ITSELF AS IT BEARS NO SIGNATURE OF ANY JUDGE, INFACT, THAT JUDGE WAS TAKEN FROM THE BENCH LAST YEAR, AS THE PAPER SPEAKS FOR ITSELF, IT WAS NEVER SERVED TO ANY BODY, IT IS NOTHING MORE THAN A NICE COMPUTER PRINTOUT TO SUPPORT THE RESPONDENTS MOTION.

AGAIN, THIS IS ANOTHER DEMONSTRATION TO SHOW THAT, RESPONDENT WILL DO EVERYTHING IN ITS POWER TO KEEP PETITIONER IN DETENTION UNDER THE PRETENSE THAT CONGRESS GAVE THEM THE POWER TO DO SO.

THIS COURT SHOULD REJECT THIS ARGUMENT AND EVIDENCE, AS NO SUCH ORDER WAS EVER ISSUED.

RESPONDENTS ONLY ANSWER SO FAR TO THIS COURT IS CONGRESS GAVE THEM THE AUTHORITY TO ENGAGE IN EXTRA JUDICIAL, EXTRA JURISDICTIONAL, ACTIVITIES, BY RELYING ON EXHUSION OF ADMINISTRATIVE REMEDIES, THAT

HAS NO ENDING.

## CONCLUSION

WHEREFORE, PETITIONER PRAYS THAT THIS COURT GRANT THE FOLLOWING RELIEF:

1. ASSUME JURISDICTION OVER THIS MATTER
2. GRANT PETITIONER A WRIT OF HABEAS CORPUS DIRECTING THE RESPONDENT TO IMMEDIATELY RELEASE THE PETITIONER FROM CUSTODY
3. ORDER RESPONDENT TO TRANSFER PETITIONER TO NEW YORK WHERE JURISDICTION IS PROPER IN HIS ASYLUM CASE.
4. GRANT ANY OTHER AND FURTHER RELIEF WHICH THIS COURT DEEMS JUST AND PROPER.

DATED: 28 AUGUST, 2004
PLYMOUTH, MA. 02360

RESPECTFULLY SUBMITTED,
JOHN CONTEH # 30635,
26 LONG POND ROAD,
PLYMOUTH, MA. 02360.

Copies mailed
FRANK CROWLEY
SPECIAL ASSISTANT U.S. ATTORNEY
DHS
P.O. BOX 8728
JFK STATION.
BOSTON, MA. 02114
By placing a copy in the mail at the Detention facility where I am detained.